AB:MEF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    -against-

JOSEPH CIALONE,

        Defendant.

– – – – – – – – – – – – – – – – – – – X

COMPLAINT

(T. 18, U.S.C., § 654)

19-368 M

EASTERN DISTRICT OF NEW YORK, SS:

ANDREW MILLAR, being duly sworn, deposes and states that he is a Senior Special Agent with U.S. Customs and Border Protection, Office of Professional Responsibility duly appointed according to law and acting as such.

Upon information and belief, on or about and between April 2018 and April 2019, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOSEPH CIALONE, being an employee of the United States and a department thereof, to wit: U.S. Customs and Border Protection ("CBP"), did knowingly and intentionally convert to his own use the money of another which came into his possession and under his control in the execution of such employment and under claim of authority of such employment, which offense involved money and property having a value in excess of $1,000.

(Title 18, United States Code, Section 654)

The source of your deponent's information and the grounds for his belief are as follows[1]:

1.      I am a Special Agent with U.S. Customs and Border Protection, Office of Professional Responsibility, and I have worked in that office for 11 years.  Prior to that, I was a U.S. Customs Inspector and CBP Officer.  I have been involved in an investigation into the theft of money by a CBP Officer from arriving international passengers at John F. Kennedy International Airport ("JFK") in Queens, New York.  I am familiar with the facts and circumstances set forth below from my personal involvement in this investigation, my review of documents, records and reports, and from reports made to me by other law enforcement personnel.  Where I describe the statements of others, I am doing so only in sum and substance and in part.

2.      On or about March 26, 2019, an international passenger, who traveled on a Jet Blue flight from Trinidad and Tobago, arrived at Terminal 5 of JFK ("Passenger 1"). After Passenger 1 arrived, a CBP Officer, later identified as the defendant JOSEPH CIALONE, conducted a border enforcement exam of Passenger 1.  Thereafter, Passenger 1 noticed that $100.00 was missing from an envelope in her possession at the time of inspection.  On or about March 27, 2019, Passenger 1 filed a complaint with CBP, wherein she stated in sum and substance that she had traveled with an envelope containing $350.00, and there was only $250.00 in the envelope after a CBP Officer conducted an inspection of

---

[1]      Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth every fact learned during the course of this investigation.

her belongings. Upon a review of video surveillance obtained from JFK, which captured the enforcement exam of Passenger 1, law enforcement identified the defendant CIALONE as the relevant CBP Officer. In the video, CIALONE is seen wearing latex gloves, examining Passenger 1's handbag and pulling out a white envelope and then placing it back in. While continuing to search Passenger 1's handbag, CIALONE removed his hand in a closed-fist, removed his latex glove over his fist, and placed the used glove in his pocket. At the conclusion of the inspection, Passenger 1 was released and CIALONE walked toward the bathroom.

3.      Thereafter, agents from the CBP Office of Professional Responsibility reviewed footage from JFK Terminal 4 of border enforcement examinations conducted by the defendant JOSEPH CIALONE from on or about March 17, 2019 to April 16, 2019, both dates being approximate and inclusive. As a result of that review, agents concluded that CIALONE likely removed money from eleven female passengers while examining their personal belongings as part of a border enforcement examination.

4.      Specifically, on or about March 28, 2019, the defendant JOSEPH CIALONE examined a passenger's purse while wearing one blue latex glove on his left hand ("Passenger 2"). During this inspection, CIALONE handed Passenger 2's wallet to her. CIALONE then placed his left hand back in the purse and motioned to Passenger 2 to repack her previously examined suitcase. After having his left hand in the purse for approximately 8 seconds, CIALONE removed his hand with a closed fist, held his hand in a fist, removed the latex glove and placed it in his pants pocket.

5.      On or about March 29, 2019, JOSEPH CIALONE examined a passenger's purse while wearing blue latex gloves on both hands ("Passenger 3").  During this inspection, he instructed Passenger 3 to repack her previously examined suitcase.  CIALONE put both hands inside the purse, and then moved his right hand around inside the purse for approximately 10 seconds.  CIALONE then removed his right hand in a closed fist, removed both latex gloves, and placed the used gloves in what appeared to be his pants pocket.

6.      On or about April 1, 2019, JOSEPH CIALONE examined a passenger's purse while wearing blue latex gloves on both hands ("Passenger 4").  During this inspection, he instructed Passenger 4 to repack her previously examined suitcase.  CIALONE put one hand inside of the purse and moved it around for approximately 10 seconds.  CIALONE then removed his right hand in a closed a fist, removed both latex gloves, and placed the used gloves in what appeared to be his pants pocket.

7.      On or about April 16, 2019, JOSEPH CIALONE examined a passenger's purse while wearing blue latex gloves on both hands ("Passenger 5").  During this inspection, he instructed Passenger 5 to repack her previously examined suitcase.  CIALONE put his right hand back in the purse, moved it around inside the purse for approximately 12 seconds, then removed his right hand in a closed a fist.  CIALONE then removed both latex gloves, and placed the used gloves in his pants pocket.

8.      On or about April 18, 2019, agents from the CBP Office of Professional Responsibility monitored the defendant JOSEPH CIALONE via live video as he patrolled Terminal 4.  Agents observed CIALONE conduct multiple border enforcement exams of passengers from Caribbean Airlines flight number BW 726, arriving from Georgetown, Guyana.  In at least two of those exams, CIALONE, who was wearing latex

4

gloves on both hands, searched a female with a large handbag and after he removed his gloved hand in a fist from those bags, removed the glove and placed it in his pocket.

9.     Thereafter, agents approached the defendant JOSEPH CIALONE, asked him to come to a nearby CBP office, and placed the defendant under arrest.  During a search incident to that arrest, agents recovered three latex gloves, two of which contained one-hundred-dollar bills.

10.     In a private room, I read the defendant JOSEPH CIALONE his Miranda rights, which he stated that he understood and agreed to waive.  Thereafter, CIALONE stated in sum and substance that he has stolen one-hundred-dollar bills from passengers' handbags on at least 100 occasions over the past year, during which he was assigned to the Smuggling Interdiction Unit ("SIU").  CIALONE further stated that he only searched deep handbags, because it is easier to conceal his movements.  And then, after stealing the currency, he would go to the bathroom, where he would place the stolen money in his wallet.

11.   WHEREFORE, your deponent respectfully requests that the defendant

JOSEPH CIALONE be dealt with according to law.

ANDREW MILLAR
Senior Supervisory Special Agent
Customs and Border Protection

Sworn to before me this
18th day of April, 2019

S/ Scanlon

THE HONORA
UNITED STAT
EASTERN DIS

6